## THE JAMES TURPIE.

(District Court, D. New Jersey. February 4, 1902.)

1. SALVAGE—COMPENSATION—RESCUE OF STRANDED SHIP.

Salvage services performed by a wrecking tug and barge equipped expressly for the service, and having a crew of 30 men, by which a steamship stranded in a dangerous position on the coast was promptly and skillfully rescued without injury to herself or cargo, held to entitle the salvors to an award of 5 per cent. on the amount salved, the value of ship and cargo being $153,000 and pending freight about $4,000.[1]

2. SAME—SUIT IN REM TO RECOVER FOR SERVICES—COLLATERAL ISSUES BETWEEN SHIP AND CARGO.

In a suit by a salvor against a ship and cargo to recover for salvage services the court cannot determine issues which may incidentally or collaterally arise between the parties libeled. The ship cannot be required in such suit to answer to a claim of the cargo owners of negligent navigation as affecting the question of liability between ship and cargo, having been brought into court for a different purpose, and service of process on her proctor on behalf of the cargo is ineffective to raise such an issue.

In Admiralty. Suit to recover for salvage services.

Black & Kneeland, for libelant.

Convers & Kirlin, for the James Turpie and freight moneys.

Butler, Notman, Joline & Mynderse, for cargo.

KIRKPATRICK, District Judge. The libel in this case is for salvage, filed on behalf of the North America Wrecking Company against the steamship James Turpie and a cargo of sulphur, fruits, nuts, and other merchandise on board of her, and against the freight moneys for the carriage of said cargo. It appears from the record in the case that on October 25, 1898, the steamer James Turpie, bound from a port in Sicily to the port of New York, laden with a cargo of sulphur, fruits, nuts, and other merchandise, during a dense fog, was stranded on the Brigantine Shoals off the coast of New Jersey. The captain communicated with the owners of the cargo in the city of New York, and telegraphic notice of the accident was sent to the Delaware Breakwater, where the wrecking tug North America, was lying, and thereupon the said tug North America, which is a vessel provided with all the necessary appliances for rendering prompt and efficient assistance to vessels in distress, proceeded at once to the aid of the said Turpie. In the forenoon of the 26th of October, upon her arrival, the North America offered her services to the Turpie, but her aid was declined; and thereafter the Turpie endeavored with her own power to

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

back off the shoals upon which she had stranded, but failed in the attempt, so that at the conclusion of her efforts she lay broadside to the beach. In the meanwhile the North America lay by for the purpose of rendering aid if the same should be necessary. After the ineffectual attempt of the Turpie to relieve herself, her captain requested assistance from the North America, and such efforts were made that soon thereafter the Turpie was floated uninjured, and proceeded upon her voyage under her own steam. It is stipulated in the case that the value of the Turpie was $50,000, that the value of the freight was $4,150, and that the value of the cargo was $103,083. It also appears that the libelants are engaged in maintaining other appliances than the North America for rendering prompt assistance to vessels in distress, and that they sent to the aid of the North America a wrecking barge, equipped with steam winches, anchors, and hawsers such as are used for that purpose, and also furnished a crew of 30 men, who aided in performing the services necessary to float the Turpie. It is not denied that the services rendered were meritorious, nor that they were performed promptly and in a skillful manner. I cannot doubt that, lying broadside to the beach, and exposed to the open sea, the situation of the Turpie was a dangerous one, and that, in the event of an easterly storm, such as is liable to occur at that season of the year, the peril of a ship so situated would be extreme. The danger and risk to the salvors were not great. Nevertheless, I am of opinion that for its prompt and efficient aid the libelants are entitled to fair and reasonable compensation, and that such compensation should be 5 per cent. on the whole amount salved.

It is insisted on the part of the cargo that the court should at this time consider the question of negligent navigation on the part of the steamer as affecting the question of liability between the ship and cargo. It is alleged that no soundings were taken and no lookout kept, but that, notwithstanding the fog, she proceeded with undiminished speed. But this question of negligence is an issue which the ship has had no opportunity to traverse, and one which cannot be determined in this case. The only matter in dispute is how much the salvor is entitled to for its services. The question of whether the cargo shall be relieved of its proportionate part of the burden must be settled in a suit between the ship and cargo, brought for that purpose. It is urged that notice was given that such negligence would be insisted upon before the court at this time. But the ship was not in court for the purpose of receiving any such notice. An attempt was made on the part of the cargo to serve process upon the proctor of the ship to answer to such charge of negligence, but this court held that service upon the proctor, employed to defend as against a claim for salvage, was not sufficient to compel the ship to appear and answer to such charge. Neither the charter party nor the bill of lading under which the ship assumed the risk of carriage is before the court. The ship is in court to have determined the amount due for salvage, and not to answer to negligence to the cargo or a breach of contract of carriage. If the cargo has any claim against the ship for relief on account of its negligence, it cannot be presented here at this time. The court cannot, in a suit between the salvor and those who were benefited by his

services, determine any issues which may incidentally or collaterally arise between the parties libeled therefor.

Let a decree be drawn in accordance with these views.